IN THE UNITED STATES DISTRICT COURT
FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DARREL FITE, | : | |
| | : | |
| Plaintiff | : | |
| | : | |
| v. | : | CIVIL NO. 4:CV-14-781 |
| | : | |
| PRIMECARE MEDICAL, ET AL., | : | (Judge Brann) |
| | : | |
| Defendants | : | |

## **MEMORANDUM**

July 24, 2015

**Background**

This pro se civil rights action pursuant to 42 U.S.C. § 1983 was filed by Darrel Fite who is presently confined at the State Correctional Institution, Coal Township, Pennsylvania (SCI-Coal Twp.). Service of the Complaint was previously ordered.

Named as Defendants are the Centre County Correctional Facility, Bellefonte, Pennsylvania and PrimeCare Medical Inc. ("PrimeCare").[1] Plaintiff states that he entered the Centre County Correctional facility on January 16, 2014.

---

[1] PrimeCare is a private corporation which has been contracted by the Centre County Correctional Facility to provide health care for its inmates.

1

He initially asserts that while confined at the prison on February 25, 2014, L.P.N. Goodman, a non-defendant, told him he had to take his 4:00 p.m. medication at 12:00 p.m.[2] See Doc. 1, ¶ IV(1). The medication at issue was purportedly prescribed by his treating psychologist. Dr. Terri Calvert, who has also not been named as a defendant in this action.[3]

When Plaintiff explained to Goodman that to do so would be contrary to Dr. Calvert's prescription, the LPN allegedly told the inmate that if he did not take the medication now he "would not receive his 4:00 p.m. dose and would go without." Id. Although Fite took the medication, he submitted a complaint to Dr. Calvert's attention regarding the incident that same day. The next day, Fite states that he received a response from Thomas Tobin, L.P.N. stating that the change "should have no effect on you medically this is protocol to increase nurse efficiency." Id. at (2).

On March 1, 2014, L.P.N. Walls, also a non-defendant, was distributing medications. It is alleged that as Plaintiff approached the medication cart, Walls

---

[2] Presumably, Licensed Practical Nurse (LPN).

[3] An exhibit attached to the Complaint indicates that Fite was taking multiple psychotropic medications including, Vistarol, Zoloft, Lamictal, Neurontin, Remeron as well as Naproxen for pain prior to his admission to the prison. Thereafter, Dr. Calvert and Plaintiff agreed on February 7, 2014 that Vistarol, Zoloft, and Remeron should be discontinued.

purportedly "started crying and removed herself from the housing unit." Id. at (3). She later returned but refused to give Plaintiff his dose of Neurontin which he is supposed to receive three (3) times daily.

Plaintiff next contends that he was denied an evening dose of medication on March 8, 2014 by L.P.N. Johnston, a non-defendant, on the basis that it was her understanding that Fite was only to be given the medication twice a day (morning and afternoon). The Complaint next contends that Plaintiff met with Dr. Calvert on March 14, 2014 and discussed the above described incidents. Calvert allegedly replied that "there was not to be a removal of my medication (3x's daily) when the C.C.C.F. informed her that they were going to being [sic] transitioning [sic] to that of (2 medication passes a day)." Id. at p. 3. Calvert than made a computer entry and noted that Fite would receive his medication three times daily as prescribed.

Later that same day, L.P.N. Walls allegedly refused to give Plaintiff his afternoon medication without offering any explanation. On March 18, 2014, as Walls was distributing morning medications, Plaintiff states that he allowed older prisoners to go ahead of him and he moved to the rear of the medication line. After the older prisoners received their medication, Walls began to leave when Fite approached the medication cart and refused to provide Plaintiff with his

3

morning medication, informing the prisoner that he had not been in the medication line. An administrative grievance which Fite filed regarding this incident was denied. Finally, on April 8, 2014, Plaintiff claims that his morning medication was not distributed until 1:00 p.m. and he was not given his afternoon dose. He was told only that it was "the jail's fault this time." Id. at p. 4. The Complaint seeks an award of monetary damages and injunctive relief.

Presently pending is Defendant PrimeCare's motion to dismiss. See Doc. 18. The opposed motion is ripe for consideration.

**Discussion**

Defendant PrimeCare asserts that it cannot be held liable for any actions attributed to its employees under a theory of respondeat superior. See Doc. 18, ¶ 11. Moreover, since there is no indication that Plaintiff was harmed as the result of any unconstitutional PrimeCare policy, procedure, or custom, said Defendant is entitled to entry of dismissal. See id. at ¶ 12. It is also argued that the actions attributed to Prime Care did not constitute deliberate indifference.

**Standard of Review**

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of complaints that fail to state a claim upon which relief can be granted. When ruling on a motion to dismiss under Rule 12(b)(6), the court must "accept as true all

factual allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff." Kanter v. Barella, 489 F.3d 170, 177 (3d Cir. 2007)(quoting Evancho v. Fisher, 423 F.3d 347, 350 (3d Cir. 2005)).  A plaintiff must present facts that, if true, demonstrate a plausible right to relief.  See Fed. R. Civ. P. 8(a)(stating that the complaint should include "a short and plain statement of the claim showing that the pleader is entitled to relief"); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).  This requirement "calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of" the necessary elements of the plaintiff's cause of action.  Id. at 556.  A complaint must contain "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, 556 U.S. 662 , 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice." Id.  Legal conclusions must be supported by factual allegations and the complaint must state a plausible claim for relief.  See id. at 679.

"Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Twombly, at 555.  The reviewing court must determine whether the complaint "contain[s] either direct or inferential allegations

respecting all the material elements necessary to sustain recovery under some viable legal theory." Id. at 562; see also Phillips v. County of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008)(in order to survive a motion to dismiss, a plaintiff must allege in his complaint "enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element[s]" of a particular cause of action). Additionally, pro se pleadings are to be construed liberally, Haines v. Kerner, 404 U.S. 519, 520 (1972).

**Mootness**

Fite's Complaint in part seeks an award of injunctive relief. See Doc. 1 ¶ V. Specifically, he requests that Centre County terminate its contract with PrimeCare and that proper medical care be provided to the inmate population.

Federal courts can only resolve actual cases or controversies, U.S. Const., Art. III, § 2, and this limitation subsists "through all stages of federal judicial proceedings. . . ." Id. see also Steffel v. Thompson, 415 U.S. 452, 459 (1974) (the adjudicatory power of a federal court depends upon "the continuing existence of a live and acute controversy)" (emphasis in original). An actual controversy must be extant at all stages of review, not merely at the time the complaint is filed." Id. at n.10 (citations omitted). "Past exposure to illegal conduct is insufficient to sustain a present case or controversy . . . if unaccompanied by continuing, present

adverse effects." Rosenberg v. Meese, 622 F. Supp. 1451, 1462 (S.D.N.Y. 1985) (citing O'Shea v. Littleton, 414 U.S. 488, 495-96 (1974)); see also Gaeta v. Gerlinski, Civil No. 3:CV-02-465, slip op. at p. 2 (M.D. Pa. May 17, 2002) (Vanaskie, C.J.).

Furthermore, an inmate's claim for injunctive and declaratory relief fails to present a case or controversy once the inmate has been transferred. Wahl v. McIver, 773 F.2d 1169, 1173 (11th Cir. 1985) (citation omitted); see also Carter v. Thompson, 808 F. Supp. 1548, 1555 (M.D. Fla. 1992).

When this matter was initiated, the Plaintiff was confined at a correctional facility in Wernersville, Pennsylvania.[4] See Doc. 1, p. 1. Thereafter, he was transferred to SCI-Coal Twp. See Doc. 8. There is no indication that Fite will be returned to the Centre County Correctional Facility in the foreseeable future. Accordingly, Plaintiff's action to the extent that it seeks injunctive relief based upon actions which occurred during his prior confinement at the Centre County Correctional Facility is subject to dismissal on the basis of mootness.

**Personal Involvement**

A plaintiff, in order to state an actionable civil rights claim, must plead two

---

[4] The Centre County Correctional Facility is located in Bellefonte, Pennsylvania.

essential elements: (1) that the conduct complained of was committed by a person acting under color of law, and (2) that said conduct deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States. See Groman v. Township of Manalapan, 47 F.3d 628, 638 (3d Cir. 1995); Shaw by Strain v. Strackhouse, 920 F.2d 1135, 1141-42 (3d Cir. 1990).

Furthermore, federal civil rights claims brought under § 1983 cannot be premised on a theory of respondeat superior. Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988). Rather, each named defendant must be shown, via the complaint's allegations, to have been personally involved in the events or occurrences which underlie a claim. See Rizzo v. Goode, 423 U.S. 362 (1976); Hampton v. Holmesburg Prison Officials, 546 F.2d 1077 (3d Cir. 1976). As explained in Rode:

> A defendant in a civil rights action must have personal involvement in the alleged wrongs. . . . [P]ersonal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence. Allegations of participation or actual knowledge and acquiescence, however, must be made with appropriate particularity.

Rode, 845 F.2d at 1207.

Based on the nature of Fite's allegations, it is apparent that he may, at least in part, be attempting to establish liability against PrimeCare on the basis that it

employs members of the Centre County Prison medical staff. Under the standards developed in Rode, this Court agrees that any such assertions are insufficient for purposes of establishing liability under § 1983.

In order to establish a viable § 1983 claim against a private corporate entity such as PrimeCare, it must be asserted that said defendant had a policy, practice, or custom which caused injury to the plaintiff. See Adonai-Adoni v. King, 2009 WL 890683 * 2 (E.D. Pa. March 31, 2009) (a private health care provider can only be liable under § 1983 if claim rests upon some policy, practice or custom); see also Riddick v. Modery, 250 Fed. Appx. 482, 483-84 (3d Cir. 2007); Carpenter v. Kloptoski, 2010 WL 891825 * 8 (M.D. Pa. March 10, 2010)(§ 1983 claim against private medical service solely on the basis that it was responsible for providing health care is subject to dismissal).

Fite's pro se complaint includes a claim that Plaintiff was denied medication in the manner prescribed because there was a change in medication distribution protocol within the prison for the purpose of increasing nurse efficiency. This alleged policy reduced the distribution of medications at the prison. However, there is no specific allegation that this change was the result of a PrimeCare policy, practice or custom.

The complaint asserts that Dr. Calvert indicated that she had been informed

by prison officials that they were going to be switching to two medication passes a day. See Doc. 1, p. 3. There is no assertion that the policy was formulated by PrimeCare. Furthermore, in an exhibit attached to the complaint dated March 9, 2014 (over a week after Tobin allegedly informed Fite of the new protocol), Plaintiff admits that PrimeCare staff "are still conducting 7:00 am 12:00 pm 4:00 pm and 7:00 pm medication passes." Id. at p. 5.

Based upon the Plaintiff's own admission that PrimeCare was still having four daily distributions of medications as of March 9, 2014, there is no basis for a claim that a PrimeCare distribution reduction policy change resulted in denial of medication to Plaintiff on March 1, 2014 and March 8, 2014. Moreover, the purported denial of medication to Fite on March 18, 2014 was due to a perception by nursing staff member that the inmate had not been standing in the medication line as required and was not related to any reduction in medication distribution procedures. Finally, Plaintiff's contention that his morning medication on April 8, 2014 was delivered late and he was not given an afternoon dose does not support a claim of an unconstitutional policy change by PrimeCare.

In conclusion, given Plaintiff's admission that PrimeCare was still conducting four distributions of medications daily there is no factual support for a claim based upon any PrimeCare policy change reducing the number of daily

medication distributions.

**<u>Deliberate Indifference</u>**

PrimeCare also asserts that the Complaint fails to allege any facts which could support a claim that it acted with deliberate indifference to Plaintiff's medical needs.

The Eighth Amendment "requires prison officials to provide basic medical treatment to those whom it has incarcerated." <u>Rouse v. Plantier</u>, 182 F.3d 192, 197 (3d Cir. 1999) (citing <u>Estelle v. Gamble</u>, 429 U.S. 97 (1976)). In order to establish an Eighth Amendment medical claim, an inmate must allege acts or omissions by prison officials sufficiently harmful to evidence deliberate indifference to a serious medical need. See <u>Spruill v. Gillis</u>, 372 F.3d 218, 235 - 36 (3d Cir. 2004); <u>Natale v. Camden Cty. Correctional Facility</u>, 318 F.3d 575, 582 (3d Cir. 2003). In the context of medical care, the relevant inquiry is whether the defendant was: (1) deliberately indifferent (the subjective component) to (2) the plaintiff's serious medical needs (the objective component). <u>Monmouth Cty. Corr. Inst. Inmates v. Lanzaro</u>, 834 F.2d 326, 346 (3d Cir. 1987); <u>West v. Keve</u>, 571 F.2d 158, 161 (3d Cir. 1979).

A serious medical need is "one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily

recognize the necessity for a doctor's attention." Mines v. Levi, 2009 WL 839011 *7 (E.D. Pa. March 26, 2009)(quoting Colburn, 946 F.2d at 1023); Monmouth Cty. Corr. Inst. Inmates, 834 F.2d at 347.  "[I]f unnecessary and wanton infliction of pain results as a consequence of denial or delay in the provision of adequate medical care, the medical need is of the serious nature contemplated by the Eighth Amendment." Young v. Kazmerski, 266 Fed. Appx. 191, 193 (3d Cir. 2008)(quoting Monmouth Cty. Corr. Inst. Inmates, 834 F.2d at 347).

The Supreme Court has established that the proper analysis for deliberate indifference is whether a prison official "acted or failed to act despite his knowledge of a substantial risk of serious harm." Farmer v. Brennan, 511 U.S. 825, 841 (1994).  A complaint that a physician or a medical department "has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment [as] medical malpractice does not become a constitutional violation merely because the victim is a prisoner." Estelle, 429 U.S. at 106.  When a prisoner has actually been provided with medical treatment, one cannot always conclude that, if such treatment was inadequate, it was no more than mere negligence.  See  Durmer v. O'Carroll, 991 F.2d 64, 69 (3d Cir. 1993).   It is true, however, that if inadequate treatment results simply from an error in medical judgment, there is no constitutional violation.  See

12

id. However, where a failure or delay in providing prescribed treatment is deliberate and motivated by non-medical factors, a constitutional claim may be presented. See id.; Ordonez v. Yost, 289 Fed. Appx. 553, 555 (3d Cir. 2008) ("deliberate indifference is proven if necessary medical treatment is delayed for non-medical reasons.").

Plaintiff contention that he was suffering from mental health issues which required treatment with multiple daily medications sufficiently satisfies the serious medical need prong of Estelle at this juncture in the proceedings. However, with respect to the subjective deliberate indifference component, this Court agrees that there are no allegations that any Defendant was responsible for any denial or delay in any medical treatment which Plaintiff required. On the contrary, Fite acknowledges being provided with regular care by Dr. Calvert and there is no assertion that he had a medical problem which went untreated. Plaintiff also admits that the exact medication prescribed by Dr. Calvert was provided. The Plaintiff also clearly admits that PrimeCare is "**still** conducting 7:00a.m., 12:00 p.m., 4:00 p.m. and 7:00 p.m. medication passes." (emphasis added) Doc. 1, p. 5. As such, there is no basis for a deliberate indifference claim against Defendant

PrimeCare.[5]

**Centre County Correctional Facility**

With respect to the Remaining Defendant, Centre County Correctional Facility, 28 U.S.C. § 1915 (e)(2)(B)(I) permits a court to dismiss a claim at any time if it determines that the claim is frivolous or malicious.

The United States Supreme Court has ruled that a § 1983 action brought against a "State and its Board of Corrections is barred by the Eleventh Amendment unless [the State] has consented to the filing of such a suit." Alabama v. Pugh, 438 U.S. 781, 782 (1978). The United States Court of Appeals for the Third Circuit has likewise concluded that the Pennsylvania Board of Probation and Parole could not be sued because "it is not a 'person' within the meaning of Section 1983." Thompson v. Burke, 556 F.2d 231, 232 (3d Cir. 1977).

Similarly, a prison or correctional facility is not a person within the meaning of § 1983. See Fischer v. Cahill, 474 F.2d 991, 992 (3d Cir. 1973); Philogene v. Adams County Prison, Civ. No. 97-0043, slip op. at p. 4 (M.D. Pa. Jan. 30, 1997) (Rambo, C.J.); Sponsler v. Berks County Prison, Civ. A. 95-1136, 1995 WL 92370, at *1 (E.D. Pa. Feb. 28, 1995). Pursuant to the above standards, the Centre

---

[5] The Court offers no opinion as to whether a viable claim has been stated against any individuals not named as defendants in this matter.

County Correctional Facility is clearly not a person and may not be sued under § 1983.  See Thompkins v. Doe, No. 99-3941, slip op. at 3 (3d Cir. March 16, 2000).

Since Remaining Defendant Centre County Correctional Facility is not a properly named defendant, the claims against it are "based on an indisputably meritless legal theory."  Accordingly, the Remaining Defendant is entitled to entry of sua sponte dismissal without prejudice in its favor.  See  Wilson v. Rackmill, 878 F.2d 772, 774 (3d Cir. 1989).   An appropriate Order will enter.


                BY THE COURT:

                  s/ Matthew W. Brann
                Matthew W. Brann
                United States District Judge